## Gulf, Colorado & Santa Fe Railway Company v. F. L. Dennison.

### Decided November 8, 1899.

**1.  Contract Construed—Railway—Arrangement for Free Drayage.**

An agreement between defendant railway and plaintiff that the latter should haul to the depot of the former, for a named price agreed to be paid by it, all freight that local shippers might desire to have transported over its railroad, did not bind defendant to furnish such hauling to plaintiff unless the shippers selected defendant's road.  Where they shipped by another road to an adjoining town, and there transferred to defendant's road, plaintiff could not recover for loss of the profits of hauling to defendant's depot.

**2.  Breach of Labor Contract—Readiness to Perform—Burden of Proof.**

Plaintiff suing for damages from being denied the right to perform his contract for lucrative service, assumes the burden of showing that he was able and willing to perform his part, had defendant permitted.

Appeal from the County Court of Bell.  Tried below before Hon. D. R. Pendleton.

*J. W. Terry* and *Charles K. Lee*, for appellant.

*John B. Durrett*, for appellee.

Collard, Associate Justice.—This suit was brought by appellee, F. L. Denison, against the appellant, the Gulf, Colorado & Santa Fe Railway Company, for alleged violation of a written contract in refusing to allow plaintiff to haul 1,213,700 pounds of cotton seed meal and cake from the oil mills in Belton to its depot in the city.

Besides demurrers and general denial, defendant set up that it incurred no liability to plaintiff, because, by the terms of the contract, it

was under no obligation to haul any freight in Belton to the depot, but was only bound to pay plaintiff for such freight in Belton hauled to the depot, or that the parties in Belton desired him to haul to the depot, and that he was not desired or requested by the parties in Belton to transport the freight to defendant's depot and that he did not haul the same.

By supplemental petition, plaintiff replied that if there was any delay in the movement of the freight, it was not through his fault, but was unavoidable, and was in contemplation of both parties at the time of making the contract; that the demand of the shipper for bills of lading was not imperative on defendant and imposed no duty on defendant to receive the freight; that the consignee and not the shipper had the option of selecting the railway over which the shipment should be made, and that the consignee informed plaintiff that he would give ample time for delivery of the freight to defendant's depot; and further, that the owner and shipper did not demand immediate movement of the freight, but only immediate bills of lading; that plaintiff, in order to satisfy the shipper, offered and proposed to defendant, at the time it stopped him from transporting the freight, that if defendant would deliver bills of lading to the owner and shipper he would insure the freight and fully indemnify defendant from all loss until the freight should be delivered at the depot.

Verdict and judgment for plaintiff for $245.98, and cause appealed by defendant to this court in due form.

The written contract set up is as follows:

"*State of Texas, County of Galveston.*—This agreement between the Gulf, Colorado and Santa Fe Railway Company, party of the first part, and Frank L. Dennison, of the county of Bell, State of Texas, party of the second part,—witnesseth: That in consideration of the stipulations and undertakings herein contained, the parties hereto agree and undertake as follows:

"First.  The party of the first part will deliver to the party of the second part all freight arriving at the station of Belton consigned to parties living in the city of Belton, or within a radius of one and a quarter miles of the courthouse, situated in said city, excepting such freight as consignees may have hauled at their own expense, and will pay to the party of the second part in full for his services to be rendered hereunder, as follows:  For cotton, 12½ cents per bale; for lumber, 2 cents per 100 pounds; for cotton seed, 2½ cents per 100 pounds; for other classes of freight, 3 cents per 100 pounds; and it will also pay the same rates for all freights originating in the territory above named to be transported to the depot of the party of the first part at Belton for shipment therefrom.

"Second.  The party of the second part agrees and undertakes to promptly receive all such freight from the party of the first part, and when so receiving said freight will pay to the party of the first part its

charges and freight money due thereon, if any, and promptly transport and deliver the same to the consignees at their residences, stores, warehouses, or such other place or places within the territory above defined as may be designated or required by the consignor, and on such delivery to take the proper receipt from the consignee, but it is understood that where the consignor shall refuse to receive freight from the party of the second part, the party of the second part will, without cost of carriage to the party of the first part, return the same to the depot of the party of the first part, and collect back from the party of the first part the freight charges which the party of the second part may have paid thereon. The party of the second part further agrees and undertakes to receive from any and all parties within the territory above defined, at their stores, warehouses, residences, and such other places as they may designate, all freight that such parties may desire to have transported to any competitive point on or off the line of the Gulf, Colorado & Santa Fe Railway Company over the railroad of the party of the first part, and promptly transport and deliver all such freight at the depot of the party of the first part at its said station of Belton.

"Third. It is further agreed that the party of the second part shall be liable for all damages or loss to or of such freight that may be carried while the same is in the possession of the party of the second part, and will hold the party of the first party harmless and indemnify it against all such claims for loss or damages, and in case the party of the first part shall be sued for any such claim or claims, the party of the second part will appear and defend all such suits at his own cost and expense, and in case the party of the second part shall fail to do so, he shall pay the party of the first party all expenses incurred in defending such suit or suits, including attorney's fees; and it is further agreed that the party of the second part will execute a good and sufficient bond, with sureties acceptable to the party of the first part, conditioned for the faithful performance of this contract; and it is further agreed that if, at any time, in the judgment of the party of the first part, its liabilities incurred on account of the acts or performances or failures of the party of the second part may amount to the sum of $2000, it may require an additional bond, and may require such additional bonds from time to time as will at all times afford it security for the future performance or failures of the party of the second part, in at least the sum of $2500, and on failure to give such bond or security the party of the first part may at its option terminate this contract.

"Fourth. It is further agreed, that if in the judgment of the party of the first part the party of the second part does not perform this contract with reasonable dispatch and promptness, the party of the first part may at its election terminate the same.

"Fifth. Payment shall be made to the party of the second part the first day of each month of the amount earned hereunder during the preceding month.

"Sixth. It is further agreed that this contract may be terminated

by either party by giving the other party thirty days notice in writing to that effect, the same to be terminated at the expiration of such thirty days notice in writing.

"Seventh.   This contract shall continue in effect, unless terminated as hereinbefore provided, for two years from the date hereof.

"Witness our hands, this 15th day of November, 1894.

(Signed)   "J. L. Polk,<br>"For the Gulf, Colorado & Santa Fe Railway.<br>(Signed)   "Frank L. Dennison.

"Witness:   S. C. Taylor."

The testimony shows that plaintiff commenced delivering the freight at defendant's depot, and delivered a part of it, when he was stopped by defendant and was paid for the freight delivered at the contract price. The shipper and owner made arrangemnts to have the freight carried to Temple on the Missouri, Kansas & Texas Railway and there delivered to defendant, the Gulf, Colorado & Santa Fe Railway Company, upon the ground that plaintiff could not deliver the freight to the latter with dispatch because of rain and bad roads.   We do not find, however, that the evidence shows conclusively that plaintiff could not have delivered the freight in a reasonable time.   But it is a fact that the oil mill people, the consignor, changed the route, delivering the freight to the Missouri, Kansas & Texas Railway Company in Belton, and that railroad delivered it to the defendant at Temple, another station on both roads.   Other facts need not be stated.

The second paragraph of the contract sued on, in the part relating to the subject of the right of plaintiff to carry freight originating in Belton to defendant's depot, limits that right to carry such freight as the owners "may desire to have transported to any competitive point on or off the line of the defendant company over the railroad of the party of the first part,"—the defendant.   The contract nowhere binds the defendant to furnish hauling to plaintiff of such freight.   It only binds the company to pay him for such freight as he does in fact deliver at its depot.

The court's charge numbered 2 instructs the jury:   "You are further instructed, that by the terms of the written contract introduced in evidence the plaintiff undertook and agreed to promptly transport the freight described in his petition, to wit, 1,213,700 pounds of cotton seed meal and cake, from the Belton Oil Mill to defendant's depot at Belton, Texas, and that defendant undertook and agreed to pay plaintiff 3 cents per 100 pounds for each 100 pounds of said freight for transportation of the same," etc.

The charge is erroneous.   It assumes that the freight in question comes within the contract binding both parties.   It assumes that "the parties" in Belton intending to ship desired to ship this freight by the defendant's railroad, and that the contract applied to this freight.   It would not apply, unless the parties in Belton shipping freight desired

it carried by the defendant company. The contract does not undertake to bind the defendant unless the parties shipping selected that road for the shipment. Such parties can not be bound by the contract to ship goods on the road of defendant company, and plaintiff's rights under his contract, as against defendant, depend on the shipper's desire as stated in the contract,—a very natural stipulation. If the shipper desired his consignments carried by the other road, he could do so, and the contract would not affect him. It does not in fact undertake to bind him or the defendant. The evidence tends to show that the shipper in Belton had this shipment changed to the Missouri, Kansas & Texas Railway from Belton to Temple.

The court instructed the jury that if defendant prevented plaintiff from transporting the freight, and procured the same to be transported by some one else, as alleged, "and you further find from the evidence that it was compelled to do so by the failure or inability of plaintiff to transport said freight, according to the terms of said contract, as alleged in defendant's answer, then you will find for defendant and so say by your verdict. But the burden of proof is upon the defendant to prove these said defensive facts by a preponderance of the evidence." The court should not have so instructed the jury. The burden was upon plaintiff to show that defendant breached the contract, and to show that he was ready and able to perform the contract to haul promptly the freight tendered to him by the proper parties.

Until the plaintiff shows that defendant was responsible for the shipment of the freight by the Missouri, Kansas & Texas Railway Company, other questions as to his readiness to haul the freight and his ability to do so according to the terms of the contract will not arise. He can not recover at all unless he shows that he had the right under the contract, as against the defendant, to haul this particular freight. Then the questions as to whether defendant was justified in procuring other transportation will arise. On that branch of the case, we find no fault with the court's rulings, except as to the charge that the burden of proof was on the defendant, as to certain defensive matters. The burden was upon plaintiff to show that defendant breached the contract without cause. The judgment of the lower court is reversed, and the cause remanded.

*Reversed and remanded.*